TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellant,

v.

Rickey Lynn GROSS, M.D., Appellee.

No. 14543.

Court of Appeals of Texas, Austin.

June 25, 1986.

Jim Mattox, Atty. Gen., Susan German, Asst. Atty. Gen., Austin, for appellant.

Ace Pickens, Brown Maroney, Rose, Barber & Dye, Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

SHANNON, Chief Justice.

Rickey Lynn Gross filed an application with the Texas State Board of Medical Examiners for licensure by reciprocity. After the Board's denial of his application, Gross filed an administrative appeal with the district court of Travis County. After hearing, the district court rendered judgment overturning the Board's order and remanding the cause to the agency. This Court will affirm the judgment.

██ The Board's threshold argument is that the district court erred in overruling its plea to the jurisdiction. The foundation for the Board's jurisdictional complaint was that Gross failed to file a motion for rehearing with the Board before filing his administrative appeal. Gross acknowledges that in a contested case one must file a motion for rehearing within fifteen days after rendition of the agency's order in order to file an administrative appeal. *Vandergriff v. First Federal Savings & Loan Association,* 586 S.W.2d 841 (Tex. 1979). The Medical Practices Act, Tex.Rev.Civ.Stat.Ann. art. 4495b § 3.01(h) (Supp. 1986) specifically provides that, although a hearing before the Board to determine eligibility for licensure is not a contested case

under Tex.Rev.Civ.Stat.Ann. art. 6252–13a (Supp.1986) (the A.P.A.), the applicant, nevertheless, may take an appeal from the Board's order pursuant to § 19 of the A.P.A. Only in contested cases is the filing of a motion for rehearing a prerequisite to an administrative appeal. A.P.A. § 16(e). By virtue of § 3.01(h) of the Medical Practices Act, Gross' hearing before the Board was *not* a contested case yet, by the terms of the statute, Gross was specifically entitled to judicial review of the Board's final order. Accordingly, the district court properly overruled the Board's plea to the jurisdiction.

By other points of error, the Board insists that it correctly denied Gross' application for licensure by reciprocity. Licensure by reciprocity is governed by Tex.Rev.Civ. Stat.Ann. art. 4495b § 3.03. The Board may grant a license to practice medicine in Texas to a physician who is a graduate of a reputable medical college and who is a licensee of another state or Canadian province with requirements substantially equivalent to those established in Texas. § 3.03(a)(1). The Board, however, may refuse to issue a license to a graduate of a medical college outside the United States or Canada who the Board finds does not possess the requisite qualifications to provide the same standard of medical care as provided by a physician licensed in Texas. § 3.03(f).

Pursuant to § 3.03(f), the Board promulgated Rule 163.2(b)(5), which provides:

(5) The board may refuse to issue a license to an applicant or allow an applicant to sit for an examination if that applicant graduated from a medical school outside the United States or Canada, if the board finds that the applicant does not possess the same requisite qualifications to provide the same standard of medical care as provided by a licensed physician in this state.[1]

**1.** After entry of the order denying Gross' application, the Board amended Rule 163.2(b) to add 163.2(b)(6) which permits the Board to make a detailed inquiry into medical colleges outside the United States and Canada in its evaluation

of applicants who are graduates of such colleges. The amended rule, of course, has no applicability to this appeal, and, in view of our disposition of the appeal, it can have no applica-

22 TAC § 163.2(b)(5).

The Board's pivotal determination, Finding of Fact number seventeen, was that Gross did not possess the requisite qualifications to provide the same standard of medical care as provided by a physician licensed in Texas *"due to his inadequate medical education for which he received a degree of Doctor of Medicine from [American University of the Caribbean]."* (Emphasis supplied.) The Board's determination was grounded upon its construction of § 3.03(f) and its rule promulgated pursuant to that statute.

The facts underlying the Board's order may be summed up as follows. Gross received a bachelor of arts in chemistry from Texas Tech in 1977. He then attended the medical colleges at the Universidad del Caribe in Puerto Rico and at the American University of the Caribbean in Montserrat, West Indies. He received "D" grades in eighteen hours of courses at the Universidad del Caribe. The American University of the Caribbean, nonetheless, accepted for transfer the hours in which Gross had earned "D" grades. Gross was graduated from the medical college at the American University of the Caribbean in September 1981.

From July 1981 through June 1984, Gross was enrolled in a postgraduate residency training program in Internal Medicine at Wayne State University in Detroit. Gross was licensed to practice medicine in Michigan in August 1982.

At the Board's hearing, Gross called three physicians who testified concerning his qualifications to provide medical care. Doctor Frederick Eansley, an Assistant Professor of Medicine and Director of Medical Education at Wayne State University, testified that Gross had the requisite qualifications to provide a standard of care similar to medical students in residence at Wayne State University. In Eansley's view, Gross was an exceptional student. Eansley further testified that Gross possessed the requisite qualifications to provide the same standard of medical care as provided by a graduate of any medical school in the United States.

Doctor William Hyatt Gordon, a former Professor of Medicine at Texas Tech Medical School and a practicing physician in Texas who is Board Certified in Neurology, tested Gross and testified that Gross possessed the requisite qualifications to provide the same or better standard of medical care as is provided by a doctor licensed in Texas. Gordon concluded that Gross is qualified to provide at least the standard of medical care of the usual physician in Lubbock, Texas.

Gross also called Dr. Patrick H. Pappas, an Assistant Clinical Professor at Texas Tech Medical School who has trained many medical students. Pappas is also a practicing physician in Lubbock. He testified that Gross progressed satisfactorily during his program to be qualified on the same level as a similar student at Texas Tech. Pappas further testified that Gross had received sufficient training and experience to render medical care comparable to an ordinary, reasonable and prudent physician in Lubbock, Texas.

The Board rested without placing any evidence in the record other than Gross' medical school records.

All of the evidence was that, at the time of the hearing, Gross possessed the qualifications to provide the same standard of medical care as a physician licensed in Texas would provide. The Board determined, however, that Gross did not possess such qualifications because of "his inadequate medical education." Section 3.03(a)(1) provides that the Board may grant a license to practice medicine to any reputable physician who is a graduate of a reputable medical college and who is a licensee of another state having requirements for physician licensure substantially equivalent to those established in Texas. The Board *did not* conclude that Gross was not a "reputable" physician, or that the medical college of the American University of the Caribbean was not a "reputable" medical college, or that

bility to the Board's reconsideration of Gross'    application.

Michigan's requirements for physician licensure were not substantially equivalent to those established in Texas. Instead, pursuant to its construction of § 3.03(f), the Board concluded that Gross did not possess qualifications to provide the same standard of medical care as would be provided by a physician licensed in Texas because of his poor performance in medical school.

Gross insists that § 3.03(f) limits the Board to consideration of his qualifications at the time of the application. The Board, on the other hand, claims that § 3.03(f) permits it to view Gross' qualifications from the beginning of his medical school education. If the statute limits the Board to consideration of the applicant's current qualifications, then the Board's order was not supported by substantial evidence and the district court's judgment overturning the order should be affirmed. If, on the other hand, the statute permits the Board to view the applicant's qualifications from the beginning of his training and to deny his application based solely on his performance in medical school, then there is substantial evidence to support the Board's conclusion and the district court's judgment should be reversed.

Subchapter C of the Medical Practice Act, Tex.Rev.Civ.Stat.Ann. art. 4495b, is entitled "Licensure." Certain provisions of subchapter C provide that a properly qualified applicant may sit for an examination in order to obtain a license to practice medicine. In addition, however, § 3.03 recognizes that the Board may grant a license to practice medicine by reciprocity. Section 3.03(a)(1) provides that the Board may issue a license to practice medicine to a reputable physician who is a graduate of a reputable medical college and who holds a medical license from another state which has requirements substantially equivalent to those established by the laws of Texas. Sections 3.03(b) and (c) provide that the application must be in writing, contain certain statements and be accompanied by certain documents. Notwithstanding the foregoing, the Board may refuse to grant a license by reciprocity if it finds the applicant does not possess the qualifications to provide the same standard of medical care as provided by a physician licensed in Texas. § 3.03(f).

Under the statutory scheme for licensure by reciprocity, an applicant must be a reputable physician who is a graduate of a reputable medical college and who is licensed by another state having requirements substantially equivalent to those of Texas. The applicant must also be prepared to demonstrate that he possesses the qualifications to provide the same standard of medical care as provided by a physician licensed in Texas. Viewing § 3.03 in its entirety, *State v. Delesdenier*, 7 Tex. 38 (1851), this Court concludes that none of its provisions empower the Board to deny an application for licensure by reciprocity solely upon the basis of the applicant's performance while in medical school.

Gross was admitted to practice medicine in Michigan in 1982. Presumably, Gross' medical education was deemed satisfactory by the Michigan authorities, else they would not have admitted him to practice. As the Board made no issue in its proceeding of whether Michigan's requirements for physician registration and practice are substantially equivalent to those of Texas, the Board must accept, under the statutory scheme of licensure by reciprocity, that Michigan properly assessed Gross' academic performance in medical school.

Having complied with § 3.03 in all other respects, Gross' burden at the Board's hearing was to demonstrate that he currently possessed qualifications to provide the same standard of medical care as provided by physicians licensed in Texas. The Board's only mission, under this record, was to determine whether or not Gross discharged that burden. The district court concluded correctly that he did.

The judgment of the district court is affirmed.